IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| MITZI DAVISON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12-03411-CV-S-DGK |
| | ) | |
| BAY AREA CREDIT SERVICE, LLC, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER ENFORCING SETTLEMENT

This case arises from allegations by Plaintiff Mitzi Davison that Defendant Bay Area Credit Services, LLC violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"). Pending before the Court is Defendant's Motion to Compel Settlement and Award Attorneys' Fees (Doc. 4) and Plaintiff's opposition (Doc. 9).[1] Finding that the parties reached an agreement on all material terms of the settlement, Defendant's motion is granted in part.

### Background

On August 30, 2012, Plaintiff filed her Complaint against Defendant for violations of the FDCPA. On September 11, 2012, after negotiations between the parties, Plaintiff's counsel, Mark Molner, sent Defendant's General Counsel, Taylor Pensoneau, the following email:

> Taylor,
> We are agreed as to the $2,500. Here are our other proposed settlement terms. Please approve the following:
> - Defendant delete any negative trade-lines;
> - Defendant to draft release agreement;
> - Payment to be made to "Price Law Group, APC" within ten (10) days of receipt of an executed settlement agreement from Plaintiff and W9 (attached).
>
> Best regards,
> Mark D. Molner, Esq.

---

[1] In ruling on this motion, the Court has also considered Defendant's reply (Doc. 10).

(Doc. 4, Exhibit A). Mr. Pensouneau replied that same day: "Mark, this sounds good. We'll send over a draft." *Id*. Three days later, on September 14, 2012, Defendant provided Plaintiff with a copy of the draft release agreement. On September 28, 2012, Defendant followed up with Plaintiff regarding the executed release agreement and W-9 form. Mr. Molner responded on October 3, 2012, attaching the W-9 form and stating that "we should have the release to you shortly" (Doc. 10-2, Exhibit D).

A month later, on November 1, 2012, Plaintiff filed an Amended Complaint (Doc. 3). The next day, Mr. Molner emailed Mr. Pensoneau and notified him that Plaintiff was "not agreeable to settling this matter on the terms previously discussed" (Doc. 4, Exhibit B). Mr. Molner relayed Plaintiff's new demand of $60,000, inclusive of attorneys' fees and costs, based upon "new evidence." *Id*. Defendant now seeks to enforce the alleged settlement agreement reached between the parties on September 11, 2012.

**Standard**

A district court possesses the inherent power to enforce a settlement agreement where the terms are unambiguous. *Barry v. Barry,* 172 F.3d 1011, 1013 (8th Cir. 1999). It is well established that settlement agreements are governed by principles of contract law. *MLF Realty L.P. v. Rochester Ass'n,* 92 F.3d 752, 756 (8th Cir. 1996). "In order for a settlement agreement to be enforceable, the parties must have reached agreement on the essential terms of the deal." *Seaton v. Freeman Health Sys.*, 05-5047-CV-SW-FJG, 2006 WL 3360386, at *2 (W.D. Mo. Nov. 20, 2006) (citing *Sheng v. Starkey Labs.*, 117 F. 3d 1081, 1083 (8th Cir. 1997)). A settlement is valid and enforceable even if it contemplates the parties signing a release at a later date. *Byrd v. Liesman*, 825 S.W.2d 38, 39 (Mo. App. 1992).

## Discussion

Based on the parties' emails, the Court finds that the parties reached a settlement agreement on September 11, 2012 in which Defendant agreed to the following: (1) pay Plaintiff $2,500 within ten days of receipt of the executed settlement agreement; (2) delete any negative trade-lines regarding Plaintiff; and (3) draft a release agreement.

Plaintiff argues that the September 11, 2012 emails between the parties were mere negotiations, and that the parties never reached an agreement on the essential terms of the agreement, specifically what language would be included in the release. The evidence does not support this characterization. The emails show that the parties negotiated all the material terms of the settlement agreement (payment amount, deletion of negative trade-lines, and release of claims); Plaintiff proposed the final terms; and Defendant accepted those terms.

Plaintiff's main argument is that the draft release agreement was "left open for review and approval of the parties," and because Plaintiff did not approve the release of claims language, the parties never reached a final agreement. Specifically, Plaintiff argues that she would not have agreed to language stating that Plaintiff "agrees to release and waive any and all claims, actions, causes of action, liabilities or obligations" she has against Defendant at the time of executing the agreement "now existing, known or unknown, asserted, or unasserted …"

This argument is without merit. First, the parties' negotiations prior to September 11, 2012 contained no discussion of the release terms or conditions. A release of all claims is standard to any settlement agreement. If an all-encompassing release was material to Plaintiff, Plaintiff should have raised the issue during settlement negotiations.[2]

---

[2] Specifically, Plaintiff's counsel should have raised this issue in his September 11, 2012 email in which he informed Defendant of Plaintiff's "other settlement terms." Additionally, Plaintiff's counsel could have objected to the release language in his October 3, 2012 email stating that the release was forthcoming "shortly" (Doc. 10-2, Exhibit D).

Moreover, Plaintiff did not raise concerns about the release language after September 11, 2012, when she had the opportunity to review the release language. On October 3, 2012, weeks after receiving the draft release, Mr. Molner informed Defendant that he would be sending over the executed release shortly (Doc. 10-2, Exhibit D). At that point, he expressed no concerns with the agreement language. *See Byrd*, 825 S.W. 2d at 41 (enforcing a settlement where there was no objection to the specific language of the release). He also provided Defendant with a copy of the firm's W-9, presumably with the understanding that a settlement had been reached and payment was forthcoming.

Similarly, a month later when Mr. Molner informed Defendant that his client was no longer amenable to settling on the terms previously agreed to, he made no mention of the release agreement or any problems with it.[3] Rather, he demanded that Defendant increase its payment to his client from $2,500 to $60,000. Plaintiff's argument that the draft release was the reason precluding settlement between the parties is, therefore, inconsistent with the correspondence between the parties and appears to the Court to be a disingenuous way to avoid the settlement.[4] The Court declines to award attorneys' fees.

## Conclusion

For the reasons stated herein, the Court finds the parties have reached an agreement on all material terms of the settlement. Accordingly, Defendant's motion (Doc. 4) is granted in part. The parties shall file the appropriate settlement documents on or before March 13, 2013.

IT IS SO ORDERED.

---

[3] In her motion (Doc. 9, at 7), Plaintiff states that she objected in writing to the written language found in the release agreement ("upon written objection to the language found in the Release Agreement and assertion of additional claims under the TCPA…"). However, this statement is not supported by the evidence. The Court cannot find any writing in which Plaintiff specifically objected to the language of the release agreement prior to her motions before this Court.

[4] Because there is no substantial factual dispute over the existence or terms of a settlement, the Court finds that an evidentiary hearing is unnecessary. *See Stewart v. M.D.F., Inc.,* 83 F.3d 247, 251 (8th Cir. 1996).

Date: February 20, 2013                    /s/ Greg Kays
                                           GREG KAYS, JUDGE
                                           UNITED STATES DISTRICT COURT